# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SHAKOPEE CHEVROLET INC., | Civil No. 20-2366 (JRT/LIB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS** |
| GENERAL MOTORS LLC, | |
| Defendant. | |

Aaron R. Thom and Samantha Ellingson, **THOM ELLINGSON**, 825 Nicollet Avenue, Suite 1720, Minneapolis, MN 55402, for plaintiff;

Kristina Kaluza, **DYKEMA GOSSETT PLLC**, 4000 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402; and Robert H. Ellis, **DYKEMA GOSSETT PLLC**, 400 Renaissance Center, Detroit, MI 48243, for defendant.

Plaintiff Shakopee Chevrolet Inc. ("Shakopee Chevrolet") filed this action in state court against Defendant General Motors LLC ("GM"), alleging three counts of violations of Minnesota's Motor Vehicle Sale and Distribution Act ("MVSDA"). GM removed the action to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1332(a). GM subsequently filed a Motion to Dismiss pursuant to Rule 12(b)(6). Because Plaintiff has pleaded sufficient facts to state a claim under the MVSDA for each count alleged, the Court will deny the Motion.

**BACKGROUND**

I.     **FACTUAL BACKGROUND**

    A.     **Shakopee Chevrolet's Dealer Agreements & 2016 APR Notice**

Shakopee Chevrolet is a Minnesota new motor vehicle dealer, with a principal place of business in Shakopee, Minnesota. (Notice of Removal, Ex. 1 ("Compl.") ¶¶ 1–2, Nov. 20, 2020, Docket No. 1-1.) GM manufactures and distributes Chevrolet vehicles for sale in Minnesota, and is incorporated in Delaware with a principal place of business in Michigan. (*Id.* ¶¶ 3–4.) Since 2010, GM has been in the practice of entering into 5-year dealer sales and service agreements that must then be renewed. (*Id.* ¶ 11.) In 2010, Shakopee Chevrolet and GM entered into a dealer sales and service agreement ("Dealer Agreement"), and Shakopee Chevrolet consented to GM's assignment of an Area of Primary Responsibility ("APR")[1] consisting of seven census tracts in Carver and Scott counties in Minnesota. (*Id.* ¶¶ 13–14.) The Dealer Agreement was renewed in 2015 and retained the same APR. (*Id.* ¶ 17; Compl., Ex. A ("Dealer Agreement") at 72–74, Nov. 20, 2020, Docket No. 1-1.)

Section 4.2 of the 2015 Dealer Agreement governs the APR, and provides that GM has the sole discretion to revise the APR "consistent with dealer network planning

---

[1] GM assigns its dealers either APRs or Areas of Geographic Sales and Service Advantage "AGSSA" as the area of sales effectiveness. (Compl. ¶ 14 n.1.) Minnesota law defines an "area of sales effectiveness" as a "geographic area designated in a franchise agreement or related document where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer, distributor, or factory branch." Minn. Stat. § 80E.03, subd. 10b.

objectives." (Dealer Agreement at 29: § 4.2.) Section 4.2 requires GM to advise the dealer in writing of a proposed change and the reasons for the modification, and to consider any information submitted by the dealer prior to issuing a revised APR Notice. (*Id.*)

The Dealer Agreement also requires dealers to "effectively, ethically and lawfully sell and promote the purchase, lease and use of Products by consumers" in its APR. (Dealer Agreement at 31: § 5.1.1.) GM measures dealer effectiveness based on a calculation of a dealer's Retail Sales Index ("RSI"). (Compl. ¶ 33.) Satisfactory performance consists of having an RSI or 100 or more; if a dealer fails to achieve satisfactory performance, GM will inform the Dealer in writing that it is in breach of its contractual obligations, and may eventually terminate the Dealer Agreement. (*Id.* ¶¶ 35–36; Dealer Agreement at 20: § 9, 45: § 13.2.) The number of vehicles that a dealer must sell to reach an RSI of 100 is calculated based upon its APR. (Compl. ¶ 37; Dealer Agreement at 20: § 9.)

In or about January 2016, GM informed Shakopee Chevrolet that it intended to expand Shakopee Chevrolet's APR from 7 to 13 census tracts. (Compl. ¶¶ 18, 26–29.) Shakopee Chevrolet objected to the change, arguing that it violated Chapter 80E of the Minnesota Statutes and requested to resolve the issue through the dispute resolution mechanism provided in the Dealer Agreement, but GM allegedly refused to participate in the process. (*Id.* ¶¶ 18–21.) Shakopee Chevrolet avers that the modified APR would have increased its RSI obligation by 75–100%. (*Id.* ¶ 47.)

Shakopee Chevrolet contends that the attempted 2016 APR modification never took effect because it violated provisions of the MVSDA, and that Shakopee Chevrolet's APR remained unchanged from the 2015 Dealer Agreement. (Compl. ¶ 62.)

**B.  2020 Dealer Agreement Renewal**

The 2015 Dealer Agreement expired by its own terms on October 31, 2020, and in September 2020, GM provided Shakopee Chevrolet with documents to execute as a precondition for renewing the Dealer Agreement, including a 2020 APR Notice. (Compl. ¶ 22.) The 2020 APR Notice includes the same 13 census tracts that were in the 2016 APR Notice,[2] reflecting the 6 additional tracts that were not included in the APR from the 2015 Dealer Agreement. (*Id.* ¶ 26; Compl, Ex. B at 81–83 ("2020 APR"), Nov. 20, 2020, Docket No. 1-1.) Shakopee Chevrolet alleges that the APR in the 2015 Dealer Agreement covered a population range of approximately 45,388 people while the APR in the 2016 and 2020 Notices covers 75,434 people. (Compl. ¶¶ 28, 30.)

On October 16, 2020, GM notified Shakopee Chevrolet that if it failed to execute the 2020 Dealer Agreement documents, including acceding to the 2020 APR Notice, the franchise relationship would be terminated on October 31, 2020. (*Id.* ¶¶ 22–23, 52.)

---

[2] Though it was not attached to the Complaint, the Court considers the 2016 APR Notice to be necessarily embraced by the pleadings because the effect of this document is central to the dispute. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003))).

Shakopee Chevrolet reiterated its objection to increasing its APR, notified GM that it had a right under Minn. Stat. § 80E.13(p) to protest the proposed change, and stated that it would sign a franchise agreement that maintained the APR in the 2015 Dealer Agreement. (*Id.* ¶¶ 53–55.)

On October 28, 2020, GM sent a letter to Shakopee Chevrolet stating that the APR had been modified pursuant to the 2016 APR Notice, effective January 27, 2016, and that the APR in the 2020 Dealer Agreement would remain consistent with that in the 2016 Notice. (*Id.* ¶¶ 55–57.)

## II.  PROCEDURAL BACKGROUND

Shakopee Chevrolet filed an action in state court on October 29, 2020, alleging three counts: (1) violation of Minnesota Statutes §§ 80E.13(k), 80E.135, subd. 1, and 80E.12(j) based on GM's attempt to expand Shakopee Chevrolet's APR in the 2016 APR Notice; (2) violation of Minnesota Statutes §§ 80E.135, subd. 1 and 80E.12(j) related to GM's representation that renewal of Shakopee Chevrolet's Dealer Agreement in 2020 was conditioned on acceptance of the larger APR; and (3) violation of Minnesota Statutes § 80E.13(p) for GM's attempt to expand the APR in the 2020 Dealer Agreement without regard for present patterns of motor vehicle sales and registrations. (Compl. ¶¶ 58–81.)

GM removed the action to federal court on the basis of diversity jurisdiction, (Not. Removal ¶¶ 6–9, Nov. 20, 2020, Docket No. 1), and filed a motion to dismiss pursuant to Rule 12(b)(6), (Mot. Dismiss, Dec. 14, 2020, Docket No. 9.)

**DISCUSSION**

**I.      STANDARD OF REVIEW**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true, and in the light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or mere "labels and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556 U.S. at 678 (quotation omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**II.     ANALYSIS**

   **A.  Minnesota Statute 80E Amendments**

The MVSDA is codified in Chapter 80E of the Minnesota Statutes. The MVSDA was enacted in 1981 to provide a more comprehensive approach to regulating the sale and distribution of motor vehicles in the state, to prevent fraud and other abuses and to protect the property and investments of Minnesotans. Minn. Stat. § 80E.01 (1981). In

2018, the Minnesota Legislature amended the chapter, and among other modifications, significantly expanded the scope of a dealer's rights and a manufacturer's obligations related to the areas of sales effectiveness. Minn. Stat § 80E.13(p) (2018). The amendment makes it unlawful for a manufacturer to "assign or change a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market[,]"requires the manufacturer to provide at least 90-day notice of any proposed change, and establishes a 90-day window for a dealer to commence a civil cause of action to determine whether a manufacturer has met its obligations to evaluate present patterns of traffic, sales, population shifts, and other factors in proposing the modification. *Id.*

Prior to the 2018 amendment, § 80E.13(p) only prohibited manufacturers and distributors from unreasonably reducing a dealer's area of sales effectiveness. *Id.* § 80E.13(p) (2016).

### B. Count I: Violations of Minnesota Statutes §§ 80E.13(k), 80E.135, and 80E.12(j)

Shakopee Chevrolet alleges that the 2016 APR Notice, through which GM originally sought to expand Shakopee Chevrolet's APR from 7 to 13 census tracts, did not take effect because it violated three sections of the pre-amendment version of the MVSDA. First, Shakopee Chevrolet alleges that GM's attempts to unilaterally modify the APR in 2016 violated § 80E.13(k), which prohibits a manufacturer from "threaten[ing] to modify or replace or modify[ing] or replac[ing] a franchise with a succeeding franchise that would

adversely alter the rights or obligations of a new motor vehicle dealer under an existing franchise or that substantially impairs the sales or service obligations or investments of the motor vehicle dealer." Minn. Stat. § 80E.13(k). The MVSDA defines a franchise as "the written agreement or contract between" the manufacturer and dealer "which purports to fix the legal rights and liabilities of the parties to the agreement or contract." *Id.* § 80E.03, subd. 8. According to Shakopee Chevrolet, the 2016 APR modification would have materially impacted its operations and performance expectations such that it modified, or threatened to modify the agreement that fixed the existing legal rights and liabilities of the parties.

Shakopee Chevrolet also argues that GM's violation of § 80E.13(k) then resulted in a violation of another provision, § 80E.135, which prohibits a manufacturer from using a "written instrument, agreement, or waiver, to attempt to nullify or modify any provision of this chapter or prevent a . . . dealer from bringing an action in a particular forum otherwise available under the law," and voids any instrument that would attempt to do so. *Id.* § 80E.135, subd. 1. Shakopee Chevrolet alleges that, because the 2016 APR Notice violated § 80E.13(k) by threatening to modify the franchise, that document was rendered void by § 80E.135, subd. 1.

Finally, Shakopee Chevrolet alleges that GM's 2016 actions were an attempt to compel Shakopee Chevrolet to prospectively assent to a release of Shakopee Chevrolet's rights as to the integrity of their franchise under the MVSDA, in violation of § 80E.12(j).

Section 80E.12(j) makes it unlawful for a manufacturer, distributor, or factory branch to "prospectively assent to a release, assignment, novation, waiver, or estoppel whereby a dealer relinquishes any rights under sections 80E.01 to 80E.17[.]" *Id.* § 80E.12(j).

GM argues that Count I should be dismissed because § 80E.13(p) exclusively governs changes to areas of sales effectiveness, and in 2016, § 80E.13(p) only prohibited arbitrary reductions to a dealer's area. GM argues that the 2016 language of the MVSDA reflects that the legislature was unconcerned with additions to APR territory, and found that only reductions warranted scrutiny. GM further argues that applying § 80E.13(k) as Shakopee Chevrolet does would render the language of the 2018 amendment nugatory and surplusage because if areas of sales effectiveness could be challenged under (k), then (p), as amended, would not need to exist.

As an initial matter, Minnesota courts have applied § 80E.13(k), rather than § 80E.13(p), to modifications of sales territory when the modifications were significant enough to substantially impair the sales or service obligations or investments of a dealership. *North Star Int'l Trucks, Inc. v. Navistar, Inc.*, No. A12-0732, 2013 WL 1392939, at *4 (Minn. Ct. App. Apr. 8, 2013) (unreported). The Court, therefore, finds that the existence of § 80E.13(p) does not bar claims under § 80E.13(k) when the APR modification is substantial enough to threaten the franchise's existing rights and liabilities.

The Court acknowledges that the 2015 Dealer Agreement gives GM discretion to modify a dealer's APR. Accordingly, a modest or proportionate APR increase would, as of

2016, be in accordance with the Dealer Agreement and would not trigger the protections of § 80E.13(k). Here, however, the alleged scope of the modification is significant—by the Court's math, the 2016 APR would have increased the population that Shakopee Chevrolet was servicing by over 66%—and threatened Shakopee Chevrolet's ability to meet its RSI obligations and effectively serve sales demand in its territory.

The Court finds that the significant increase in the scope of the 2016 APR Notice presents a plausible allegation that the proposed APR expansion modified, or threatened to modify, Shakopee Chevrolet's operations such that it altered the rights, obligations, and liabilities of the franchise itself. *See id.*

As to Shakopee Chevrolet's allegations that GM violated §§ 80E.135 and 80E.12(j), the Court finds that these claims are sufficiently intertwined with the facts related to alleged violations of § 80E.13(k), and that the existence of a colorable claim under this section supports Shakopee Chevrolet's claims under the other sections, as pleaded.

The Court notes that Shakopee Chevrolet has a significant hurdle to overcome at the summary judgment stage, particularly because it must demonstrate that it sustained an injury related to a modification that it alleges did not lawfully occur. *See* Minn. Stat. § 80E.17. However, the Court finds that Shakopee Chevrolet has pleaded facts consistent with a viable claim that GM's efforts to modify Shakopee Chevrolet's APR, and its written notice and correspondence to that effect, was significant enough to pose a threat to the

integrity of the franchise and undermine Shakopee Chevrolet's rights, as established in the MVSDA. The Court will deny the Motion as to Count I.

### C. Count II: Violations of Minnesota Statutes §§ 80E.135 AND 80E.12(j)

Shakopee Chevrolet alleges that, because the 2016 APR modification was not lawful, GM's efforts to compel Shakopee Chevrolet to accede to the expanded APR as part of the 2020 Dealer Agreement renewal similarly violates the prohibitions against attempting to secure a waiver of a dealer's rights under §§ 80E.135, subd. 1 and 80E.12(j). Because the Court finds that Shakopee Chevrolet has stated a viable claim that the 2016 APR modification was not permitted under Minnesota law, future attempts by GM to compel Shakopee Chevrolet to accept the expanded APR by conditioning the renewal of Shakopee Chevrolet's Dealer Agreement on such acceptance would similarly raise a colorable claim under §§ 80E.135 and 80E.12(j). Accordingly, the Court finds that Shakopee Chevrolet has met its pleading burden with regard to Count II.

### D. Count III: Violations of Minnesota Statutes § 80E.13(p)

Shakopee Chevrolet alleges that the 2020 APR Notice violates the current version of § 80E.13(p), as amended in 2018, because the expanded APR is arbitrary, does not account for the present pattern of motor vehicle sales and registrations in Shakopee Chevrolet's market, and if consummated, would unfairly depress Shakopee Chevrolet's RSI. GM argues that the 2016 APR modification complied with § 80E.13(p) as it existed at

the time, and because the 2018 version of the statute only permits a dealer 90 days to challenge a change, the limitations have run on the 2016 APR modification.

The parties dispute how the amended version of § 80E.13(p) may be triggered. GM contends that § 80E.13(p) applies only when an APR territory is assigned in the first instance, or when the specific census tracts included in an APR territory are modified after the initial assignment. GM highlights the fact that the 90-day timeline in the amended § 80E.13(p) only starts running with notice "of the proposed change" and the "change may not take effect if the dealer commences a civil action within the 90 days' notice period." *Id.* § 80E.13(p) (2018). GM therefore argues that, because Shakopee Chevrolet's APR was modified in 2016 and the 2020 APR is the same, there is no "change" that would trigger § 80E.13(p) now. Shakopee Chevrolet argues that the 2016 modification was not effective, and that even if it was effective, the language of the 2020 APR Notice makes clear that it supersedes and replaces prior APRs, thus rendering the 2016 APR devoid of legal effect. Shakopee Chevrolet argues that § 80E.13(p) applies to assignments **or** changes, and any superseding APR assignment could trigger the dealer's right to mount a challenge under § 80E.13(p).

At present, the Court need not resolve the question of whether § 80E.13(p), as amended, applies only to assignments in the first instance and subsequent modifications to specific APR census tracts, or whether its protections are available every time a new APR notice is issued. Because the Court finds that Shakopee Chevrolet has stated a

colorable claim as to the legality and effectiveness of the 2016 APR modification, Shakopee Chevrolet has also pleaded facts consistent with its position that the 2020 APR modification should indeed be considered a change. Because Shakopee Chevrolet has sufficiently alleged that GM made this 2020 APR modification "arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market[,]" *id.* § 80E.13(p) (2018), and attempted to impose this change despite the dealer's commencement of a civil action within 90 days of receiving the 2020 APR Notice, the Court finds that Shakopee Chevrolet has met its burden of stating a plausible claim as to Count III.

## CONCLUSION

There are two main disputes underlying the parties' respective positions on the motion to dismiss. First, whether the 2016 modification provided in the APR Notice was legal and effective; and second, whether the 2020 APR Notice appended to the 2020 Dealer Agreement constitutes an "assignment" or "change" under the 2018 version of § 80E.13(p). The Court finds that Shakopee Chevrolet has pleaded facts sufficient to state a plausible claim that the 2016 APR modification was not permitted under Minnesota law, and that the 2020 APR notice should then be considered a change that activates the rights and obligations established in the 2018 amendments to the MVSDA. Accordingly, the Court will deny GM's motion to dismiss.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 9] is **DENIED.**

DATED: May 5, 2021  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court